FILED IN CLERK'S OFFICE
U.S.D.C. Atlanta

JUN 0 4 2007

JAMES N. HATTEN, Clerk
By: _____ Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

THOROUGHBRED LEGENDS, LLC, )
JACINTO VASQUEZ AND FRANK )
WHITELEY, JR., )
 )
    Plaintiffs )
 )
 ) CIVIL ACTION
v. ) FILE NO.: **1:07-CV-1275**
 )
THE WALT DISNEY COMPANY; ) **(TRADEMARK INFRINGEMENT)**
AMERICAN BROADCASTING )
COMPANIES, INC.; ESPN )
PRODUCTIONS, INC.; AND ) **BBM**
ORLY ADELSON PRODUCTIONS, )
 )
    Defendants. )

## VERIFIED COMPLAINT

COME NOW the Plaintiffs, Thoroughbred Legends, LLC, Jacinto Vasquez and Frank Whiteley, Jr. and assert their claims for injunctive and monetary relief against the above named defendants based upon the following allegations.

### JURISDICITON AND VENUE

**1.**

Federal subject matter jurisdiction is conferred on this Court by 28 U.S.C. § 1338 because this action arises under the Lanham Trademark Act (15 U.S.C. § 1116; 1121;1125 (a) and (c). This Court has pendent jurisdiction of the plaintiffs'

state law claims under the general supplemental jurisdiction of this Court under 28 U.S.C. § 1367.

**2.**

Venue is proper in this Court under 28 U.S.C. § 1391 (b) because defendants' conduct results in actionable conduct in this district.

## PARTIES

**3.**

THOROUGHBRED LEGENDS, LLC ["Legends"] is the holder of a trademark on the name Ruffian, a famous thoroughbred race horse. Legends holds the trademark to eight famous race horses, including two federal trademark applications for the 'RUFFIAN' mark which squarely protect its rights for entertainment services related to the mark.

**4.**

JACINTO VASQUEZ ["Vasquez"] was a professional jockey elected to the Racing Hall of Fame who rode the famous filly, Ruffian, in nine (9) of her eleven (11) races in 1974-75. Vasquez is a part owner of the Ruffian mark. Defendants intend to portray Vasquez in a "true story" film about Ruffian, set to air on the ABC network on June 9, 2007. Defendants intend to commercially exploit Vasquez, without compensation and/or permission, by portraying him in the film.

5.

Vasquez has not given defendants permission to use his name, likeness or to falsely attribute to him actions and words. The film depicts conversations and actions by Vasquez which are untrue, and will place Vasquez in a false light.

6.

FRANK WHITELEY, JR. ["Whiteley"] is a Racing Hall of Fame thoroughbred horse trainer that trained race horses for fifty (50) years. Whiteley's most famous horse was Ruffian. Whiteley guided her through her racing career in 1974-75. Whiteley is also a part owner of the Ruffian mark.

7.

Whiteley has not given defendants permission to use his name, likeness or to falsely attribute to him actions and words. The film depicts conversations and actions involving Whiteley which are untrue, and will place Whiteley in a false light while defendants commercially exploit Whiteley without compensation and/or permission.

8.

THE WALT DISNEY COMPANY ["Walt Disney"] is a California corporation whose registered agent is Marsha L. Reed, located at 500 South Buena Vista Street, Burbank, CA 91521. Walt Disney has been served with waiver of

personal service, complaint and summons, and plaintiffs' motion and brief seeking injunctive relief sent to the registered agent by certified mail at that address.

9.

Walt Disney owns the American Broadcasting Companies, Inc. ["ABC"] which plans to air the upcoming film produced by the Walt Disney/ABC subsidiary, ESPN Productions, Inc. ["ESPN"], which is being advertised as a true story detailing Whiteley and Vasquez's training and racing of Ruffian, when neither Whiteley or Vasquez have ever been consulted or even shown the film.

10.

ABC is a New York corporation whose registered agent is Corporation Service Company located at 80 State Street, Albany, New York, 12207-2543. ABC has been served with waiver of personal service, the complaint and summons, and plaintiffs' motion and brief seeking injunctive relief by certified mail sent to the registered agent at that address.

11.

ESPN is a Delaware corporation whose registered agent is Corporation Service Company located at 2711 Centerville Road, Suite 400, Wilmington, DE 19808. ESPN has been served with waiver of personal service, the complaint and

summons, and plaintiffs' motion and brief seeking injunctive relief by certified mail sent to the registered agent at that address.

### 12.

Orly Adelson Productions, Inc. ["OAP"], is a California corporation whose registered agent is Jackoway, Tyerman, Wertheimer, Austen, Mandelbaum & Morris located at 1925 Century Park East, 22 Floor, Los Angeles, CA, 90067. OAP has been served with waiver of personal service, the complaint and summons, and plaintiffs' motion and brief seeking injunctive relief by certified mail sent to the registered agent at that address.

### FACTUAL ALLEGATIONS: THE RUFFIAN STORY

### 13.

The thoroughbred racehorse Ruffian is widely regarded to be the greatest filly who ever lived. Prior to her tragic death in her historic final nationally televised race at the Belmont Park race track on July 6, 1975, the three year old filly won all ten (10) of her races. She led every race from start to finish winning by extraordinary margins. During her racing career, Ruffian became the most well known racehorse in the Nation, and a media darling because she was a filly beating colts during a time when gender equality was a prominent social issue, and the world of sports was just beginning to open up for females. (Exhibit "A").

14.

Ruffian has been inducted into the National Museum of Racing Hall of Fame for achievements in her racing career. Ruffian won both the highly sought Eclipse Award for Outstanding Two-Year-Old Filly and the Eclipse Award for Outstanding Three-Year-Old-Filly.

15.

Her trainer was Plaintiff Frank Y. Whiteley, Jr., the famed horse trainer, who trained thoroughbreds for almost fifty years. Whiteley is a member of the Racing Hall of Fame. *See* Whiteley Affidavit ¶ 1.[1]

16.

Ruffian's primary jockey was Jacinto Vasquez. He is also a member of the Racing Hall of Fame. Vasquez rode Ruffian for nine of her eleven starts, and was riding the filly on her last race. *See* Vasquez Affidavit ¶ 3 & 4.

17.

Ruffian became such an attraction by 1975 that the New York Racing Association offered $400,000.00, then an unprecedented sum, to secure Ruffian's participation in a match race against the 1975 Kentucky Derby winner, the three

---

[1] Affidavits are attached to Plaintiffs' Motion for Temporary and Preliminary Injunctive Relief.

year old colt, Foolish Pleasure. The Association sold broadcast rights to the race and it was agreed to hold the race at Belmont Park Race Course on July 6, 1975.

### 18.

On July 6th, 1975, Ruffian raced against the colt Foolish Pleasure at Belmont. The race captured the attention of the Nation as it was touted as racing's greatest "battle of the sexes."

### 19.

While in the lead a quarter mile into the race, Ruffian broke two bones in her right foreleg, and continued to run on the shattered limb for 50 yards until Vasquez was able to pull her to a stop. It was a catastrophic injury, the full details of which are known only to the plaintiffs.

### 20.

Ruffian immediately went into surgery. Although the procedure was deemed successful, she woke up from the anesthesia too early and without adequate restraints. Her ensuing fighting and thrashing tore off her cast and caused further irreparable damage still to her already mangled leg. It was then that the decision was made by Whiteley, in consultation with the owners Mr. and Mrs. Stuart Janney, Jr., Vasquez, assistant trainer Mike Bell and a team of veterinarians, to euthanize Ruffian.

21.

Ruffian's last race and breakdown on the track was "one of the most dramatic and heartbreaking stories in all racing". *See* Jacinto Vasquez Aff. ¶ 6. To date, no film or television show has ever been produced and aired about Ruffian because only plaintiffs possessed the entirety of the story.

## FACTUAL ALLEGATIONS: DEFENDANTS' INFRINGEMENT

22.

ESPN and its sister broadcasting company ABC, both owned by Walt Disney, decided to explore producing a film that accurately told the incredible story of Ruffian's racing career and the final tragic match race. The film focuses on how plaintiffs Whiteley and Vasquez developed and raced the filly, and her tragic demise following the match race at Belmont. Defendant OAP was hired to develop the project for ESPN.

23.

On April 30th, 2004, OAP sent Whiteley and Vasquez a contract to option the movie and television series rights to their life stories, for $5,000. (Exhibit "B").

24.

The option contract was to last for eighteen months, and should a film be made, a further $100,000 was to be shared among Whiteley and Vasquez, along with Mike Bell.

25.

Representatives of ESPN and OAP actually contacted the representative of plaintiffs Vasquez and Whiteley, and gave them an ultimatum to sign for the $5,000.00 offered by a certain date as no further offer would be made. The proposed contract is attached as Exhibit B.

26.

On May 12th, 2004, Whiteley informed ESPN that he rejected their offer. Whiteley placed the defendants on notice that any use of his story or likeness would violate his legal rights and they should not depict him in the movie absent clear warning and notice to the audience that the film is a fictional account rather than a true story. (Exhibit "C").

27.

Vasquez also rejected the offer. Vasquez Aff. ¶8. Citing "serious reservations about the story being inaccurately told" and fears that ESPN was trying to "buy his silence," Vasquez decided he did not want the movie to be made

9

since it could not be faithful to the true story without his and Mr. Whiteley's participation. *Id.* at ¶ 9.

28.

Vasquez and Whiteley heard no more on the matter from any defendant, and assumed the movie was not going to be made since they were never again contacted.

29.

Legends made ESPN aware of its trademark rights in 2006, but ESPN declined to discuss the film with Legends.

30.

On information and belief, plaintiffs contend that, on January 12th, 2006, ESPN decided to go forward with production of the Ruffian movie without a rights contract being executed by Whiteley or Vasquez or a license to use the trademark from Legends.

31.

On information and belief, plaintiffs contend the movie is now set to premiere on ABC on June 9, 2007, to coincide with the running of the Belmont Stakes at Belmont Park where Ruffian ran her last race and is buried. The film will then subsequently be released on various ESPN stations, and made available online

through Amazon in a DVD format and sold to various home movie/DVD rental stores.

32.

A book by Bill Nack based on the movie that includes the mark in its title has been published by defendant ESPN and made available on Amazon and in and through numerous other media outlets in violation of Legends' trademark rights. It is accompanied by a sticker on the front cover telling purchasers to watch the upcoming Ruffian movie on ABC.

33.

On information and belief, plaintiffs believe the movie has actor Sam Shepherd cast in the starring role of Frank Whiteley. Jacinto Vasquez is portrayed by the jockey Vladimir Diaz.

34.

On information and belief, defendants directed the actors not to contact the plaintiffs, even though they alone possessed the true facts about Ruffian. The fact that neither actor sought out the real life persons they were depicting evidences the defendants' awareness of their explicit objections to the film. The defendants sought to keep the production a secret from plaintiffs.

35.

In 2007, plaintiff Legends became aware, through ads from various broadcasting stations, that ESPN's Ruffian movie had not been cancelled as presumed. Legends gave notice to ESPN that the movie was in violation of its trademark held by Legends, LLC. (Exhibit "D").

36.

In early May, ESPN replied to Legends stating they were "only using Ruffian as a title," they claimed the fair use exception to trademark law protected them from any claims of infringement. (Exhibit "E").

37.

Without any recognition of Legends' trademark rights, Bill Nack ["Nack"] published a book on Ruffian named *Ruffian: A Racetrack Romance* (2007) in May of 2007. Nack has also obtained compensation as "consulting producer" to the Ruffian movie by misrepresenting his access to Ruffian's inner circle, including plaintiffs Whiteley and Vasquez.

38.

The truth is that in 1974 and 1975, Nack was a newly hired and obscure junior sportswriter working for *Newsday* with no significant access to the trainers and the jockey that were part of the Ruffian racing team. Yet in his book on

Ruffian, he falsely recounts frequent discussions with Whiteley and Vasquez, which plaintiffs deny since they did not speak with Nack. In fact, Whiteley had not spoken to Nack for more than a year prior to the July 6, 1975 match race, and does not recall any conversations with him after the match race.

### 39.

Nack has sought to commercially benefit by falsely alleging he was a close associate of plaintiffs Whiteley and Vasquez. Defendants have portrayed Nack as having intimate personal knowledge regarding Ruffian, the critical issues regarding her injuries and her breakdown in the match race that only Whiteley, Vasquez and the owners, who are deceased, possessed.

### 40.

Defendants are making deliberate and intentional use of plaintiffs' trademarks in connection with the broadcast of a Ruffian film, publication of the Ruffian book and other entertainment oriented uses of the mark Ruffian.

### 41.

Defendants seek to give credibility to the film as a docudrama by falsely claiming actual knowledge of the details of what happened to Ruffian in her last race that led to her death. Defendants portray conversations which never occurred between Nack, the film's consultant and the author of the ESPN backed book on

Ruffian, with plaintiffs Whiteley and Vasquez. They have made Nack the main character and narrator of their movie, despite his lack of actual participation in Ruffian's life.

### 42.

Defendants seek to commercially benefit from a mark they do not own by falsely portraying the production as a "docudrama" that retells the true story of Ruffian, rather than advancing a fictionalized account based on the recollections of a newspaper reporter who was little more than a spectator at Ruffian's races.

## LEGAL CLAIMS

## COUNT ONE: INFRINGEMENT

### 43.

Plaintiffs reallege paragraphs 1 through 42.

### 44.

Plaintiff Legends is the exclusive owner of the trademark rights to Ruffian.

### 45.

No license and/or other authorization as been granted to defendants to use any of these marks, or to infringe and dilute their value to Legends.

46.

Defendants' intentional and deliberate use of the mark is intended to mislead the consuming public, members who are likely to believe the film is a work of non-fiction, authorized, sponsored and approved by the plaintiffs, all to the detriment of plaintiffs and the great unjust entitlement of the defendants.

47.

Defendants' decision to market Ruffian in both book and movie format as based on truthful "inside" information, purportedly provided by Whiteley and Vasquez to Nack, will dilute and diminish the most valuable component of the Legends trademark which is their exclusive right to tell Ruffian's story accurately based on personal knowledge of the training and racing of Ruffian.

48.

Defendants' unauthorized and unlicensed use of the mark was with the deliberate intent to commercially benefit from the plaintiffs' status as the two most knowledgeable living persons about Ruffian, her racing career and the race that led to her death in violation of 15 U.S.C. § 1114.

COUNT TWO: FALSE DESIGNATION OF ORIGIN AND DILUTION

49.

Plaintiff realleges paragraphs 1 through 48.

## 50.

Plaintiff Legends is the exclusive owner of all trademark rights to Ruffian. No license or authorization has been granted to defendants to use the marks, or variations thereon.

## 51.

With the full knowledge of the public awareness and value of the mark "Ruffian", particularly amongst the millions of Americans who follow horse racing, defendants have intentionally traded on the goodwill associated with the mark in an effort to mislead the public into falsely assuming a connection between plaintiffs and defendants' film which connection provides credibility to sell the film as a work of non-fiction, which the principal players have approved as a true and accurate recounting of Ruffian's racing life and death.

## 52.

The false and misleading suggestion of a connection with a sponsorship by plaintiffs, or approval by plaintiffs of the film's content as accurate given the portrayal of Whitely and Vasquez in the film and defendants' advertising stating the consultant Nack provided accurate intimate information about Ruffian, particularly her death and burial, an event Nack was not invited to attend.

53.

The defendants' false suggestion of a close relationship between the film's consultant and the film's two primary personalities, Whiteley and Vasquez, will create public confusion constituting unfair competition and cause serious dilution to of the value of plaintiff's trademarks in violation of 15 U.S.C. § 1125(a).

## COUNT THREE: GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT (O.C.G.A.§ 10-1-372)

54.

Paragraphs 1-53 are incorporated by this reference.

55.

Defendants' broadcast of their Ruffian "true story" film constitutes a deceptive trade practice under O.C.G.A. § 10-1-372 which is likely to cause confusion amongst consumers as to the holder of the mark.

56.

Defendants' broadcast of their Ruffian "true story" film will severely dilute the value of the "Ruffian" mark. Defendants' plan is to totally saturate all potential markets where the mark has entertainment value, including repeated television broadcasts, DVD sales and rentals and publication of a book, all of which purport to tell Ruffian's "true story" when in fact the content can only be a fictionalized account because none of the still living members of the Ruffian inner circle agreed

to participate and/or cooperate with defendants in the production of the Ruffian "true story" movie.

### COUNT FOUR: FALSE LIGHT AND DEFAMATION

57.

Paragraphs 1 – 56 are incorporated by this reference.

58.

Plaintiffs Whiteley and Vasquez refused to provide defendants permission to portray them in the Ruffian "true story" movie. They refused to license to them the "life stories", and put defendants on notice not to depict them in the film.

59.

On information and belief, defendants have depicted plaintiffs Whiteley and Vasquez in the film, purportedly engaging in conversations providing intimate information about Ruffian to a newspaper reporter, Bill Nack.

60.

On information and belief, the film falsely portrays Whiteley and Vasquez as sharing confidences with Nack. They would never share confidential medical information about this horse, which they did not own, with someone in the media who would publish whatever they told them.

18

### 61.

The false light in which they are displayed will depict them as unprofessional to those knowledgeable about racing, and as uninformed about proper protocol in the training and racing of another person's horse, all of which will damage the impeccable reputation of these two Racing Hall of Fame Legends.

WHEREFORE plaintiffs request:

a. Temporary, preliminary and injunctive relief barring the broadcast of defendants' Ruffian film in a format which uses plaintiffs' names, and represents the film to be a true story rather than fiction based, in part, on actual events;

b. Monetary damages for trademark infringement;

c. Monetary damages for Whiteley and Vasquez for placing them in a false light should defendants go forward with the broadcast of the film;

d. Reasonable attorney's fees and expenses of litigation;

e. Trial by jury on all issues where a jury demand is warranted; and

f. Any and all other equitable and monetary relief warranted under the circumstances.

A. LEE PARKS
Georgia Bar No. 563750
Attorney for Plaintiffs

Parks, Chesin & Walbert, P.C.
26th Floor, 75 Fourteenth Street
Atlanta, GA 30309
Telephone: (404) 873-8000   Facsimile: (404) 873-8050
E-mail: lparks@pcwfirm.com